

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-28-2000

# Wilson v. Quadramed Corp

Precedential or Non-Precedential:

Docket 99-5758

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Wilson v. Quadramed Corp" (2000). *2000 Decisions.* Paper 179.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/179

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 28, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5758

GEORGE WILSON, on behalf of himself and all others
similarly situated

v.

QUADRAMED CORPORATION

George Wilson,

        Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 99-cv-00095)
District Judge: Honorable William H. Walls

Argued July 17, 2000

Before: MANSMANN, RENDELL and STAPLETON,
Circuit Judges.

(Filed: August 28, 2000)

Bruce D. Greenberg, Esquire
  (ARGUED)
Joseph J. DePalma, Esquire
Allyn Z. Lite, Esquire
Mary Jean Pizza, Esquire
Lite, DePalma, Greenberg & Rivas
Two Gateway Center, 12th Floor
Newark, New Jersey 07102

Andrew R. Wolf, Esquire
1254 Highway 27
North Brunswick, New Jersey 08902

 COUNSEL FOR APPELLANT

John K. Crossman, Esquire
  (ARGUED)
Zevnik, Horton, Guibord, McGovern,
 Palmer & Fognani, L.L.P.
1330 Avenue of the Americas,
 11th Floor
New York, New York 10019

Lisa M. Campisi, Esquire
Zevnik, Horton, Guibord, McGovern,
 Palmer & Fognani
50 Tice Boulevard
Woodcliff Lake, New Jersey 07675

John M. Agnello, Esquire
Carella, Byrne, Bain, Gilfillan,
 Cecchi, & Stewart
6 Becker Farm Road
Roseland, New Jersey 07068

 COUNSEL FOR APPELLEE

OPINION OF THE COURT

MANSMANN, Circuit Judge.

The question before us is whether the District Court erred as a matter of law in holding that language contained in a debt collection letter, which notified the debtor that his

2

account has been placed with the debt collector for "immediate collection," and that it "shall afford [the debtor] the opportunity to pay this bill immediately and avoid further action against you," did not overshadow or contradict the required validation notice under 15 U.S.C. S 1692g(a) and, therefore, did not confuse or mislead the "least sophisticated debtor" as to his statutory rights under the Fair Debt Collection Practices Act to validate and dispute the debt. The debtor has also asked this court to certify a class under Fed. R. Civ. P. 23(a) and (b)(3) which would allegedly consist of similarly situated debtors, i.e., debtors who received the same debt collection letter from the debt collector.

Because we do not find any violation of section 1692g here, we will affirm the judgment of the District Court. Accordingly, we need not reach the debtor's request for class certification.

I.

On or about September 1, 1998, defendant Quadramed Corporation ("Quadramed" or the "debt collector"), on behalf of Robert Wood Johnson Memorial Hospital (the "creditor"), sent to the plaintiff, George Wilson ("Wilson" or the "debtor"), a one-page letter notifying him that it was attempting to collect a debt he allegedly owed to the hospital for almost two years. The body of the letter contains three paragraphs which read as follows:

> Our client has placed your account with us for immediate collection. We shall afford you the opportunity to pay this bill immediately and avoid further action against you.
>
> To insure immediate credit to your account, make your check or money order payable to ERI. Be sure to include the top portion of this statement and place your account number on your remittance.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing

3

within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

All three paragraphs are printed in the same font, size and color type-face. Approximately two inches above the body of the letter with a flush right margin appears,"THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." In addition, the letter provides the debt collector's name and address, the creditor's name, the date of service, balance due and client account number. The letter closes with the name of the Accounts Representative and her telephone number. All of this information, other than the body of the letter, is typed in all capital letters.

Wilson filed a purported class action suit, alleging that the debt collection letter violates section 1692g of the Fair Debt Collection Practices Act ("the Act"), 15 U.S.C. S 1692g. Quadramed filed a motion to dismiss Wilson's complaint under Fed. R. Civ. P. 12(b)(6). Wilson filed a cross motion for partial summary judgment on liability and for class certification.

The District Court, in a letter opinion dated August 25, 1999, granted Quadramed's motion to dismiss and denied Wilson's motion for partial summary judgment and for class certification. The District Court held that the "format of the letter does not obscure the plaintiff 's rights under the statute." Wilson v. Quadramed Corporation , No. 99-CV-95, Letter Order at 7 (D. N.J. Aug. 25, 1999) ("Letter Order"). In this regard, the District Court found that the "validation notice appears on the front of the letter along with the allegedly offending language and is written in the same size font." Id. As to the substance of Quadramed's letter, the court noted that the "letter does not make an explicit demand for payment, but states that the defendant `shall offer the plaintiff an opportunity' to make payment." Id. Moreover, the court specifically found that the letter does not request payment within a time period shorter than

4

the statutory thirty-day period. Thus, the court concluded that the first two paragraphs of the letter did not contradict the third, and that "even the least sophisticated debtor would understand that he is being given a choice, that he has options. . . . Such a debtor would not be mislead or confused into foregoing his statutory rights." Id. at 8.

Thereafter, Wilson filed a timely notice of appeal.1 The District Court's dismissal of this suit pursuant to Fed.R.Civ.P. 12(b)(6) is subject to de novo review.2 Klein v. General Nutrition Companies, Inc., 186 F.3d 338, 342 (3d Cir. 1999); Weiner v. Quaker Oats Co., 129 F.3d 310, 315 (3d Cir. 1997). Accordingly, we must accept plaintiff 's factual allegations as true and may affirm the District Court only if it appears that the plaintiff cannot prove any set of facts entitling him to relief. Klein, 186 F.3d at 342; see also In re Westinghouse Securities Litigation , 90 F.3d 696, 706 (3d Cir. 1996) (citation omitted). Moreover, in granting Quadramed's motion to dismiss, the District Court also denied Wilson's cross-motion for partial summary judgment as to liability and for class certification. Our

_____

1. The District Court had jurisdiction pursuant to 28 U.S.C. S 1331 and 15 U.S.C. S 1692k(d). We have appellate jurisdiction under 28 U.S.C. S 1291 as the District Court's Letter Order dated August 25, 1999 dismissed all claims with respect to all parties.

2. We note that the Seventh Circuit is the only court of appeals to have held that whether an unsophisticated consumer would be confused by allegedly contradictory or overshadowing language is a question of fact which precludes dismissal under Fed.R.Civ.P. 12(b)(6). See Walker v. National Recovery, Inc., 200 F.3d 500, 503 (7th Cir. 1999) (citing Bartlett v. Heibl, 128 F.3d 497 (7th Cir. 1997)) (other citations omitted). The majority of courts to have considered this question have, however, held that this determination involves a question of law. See, e.g., Terran v. Kaplan, 109 F.3d 1428, 1432-33 (9th Cir. 1997) (determination of whether language in collection letter overshadowed or contradicted validation notice, like interpretation of language in contracts or similar written documents, does not turn on the credibility of extrinsic evidence and, therefore, presents a question of law to be reviewed de novo); Swanson v. Southern Oregon Credit Serv., Inc., 869 F.2d 1222, 1225-26 (9th Cir. 1988); Russell v. Equifax A.R.S., 74 F.3d 30, 33, 35 (2d Cir. 1996). We agree with the majority that whether language in a collection letter contradicts or overshadows the validation notice is a question of law.

review of District Court's denial of the partial summary judgment motion is de novo.3 We turn now to the merits of this appeal.

II.

Although the debt collection letter here presents a close question, we are not convinced that the language in the first two paragraphs overshadows or contradicts the validation notice such that the "least sophisticated debtor" would be confused or mislead as to his rights to dispute or seek validation of the debt.

A.

Under the Fair Debt Collection Practices Act, a debt collector is required to include the following information in a debt collection letter to a consumer:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is o wed;
>
> (3) a statement that unless the consumer, within t hirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies th e debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

_____

3. We do not reach the class certification issue raised by Wilson since we will affirm the District Court's dismissal of the complaint under Fed. R. Civ. P. 12(b)(6).

15 U.S.C. S 1692g(a). Paragraphs 3 through 5 of section 1692g(a) contain the validation notice--the statements that inform the consumer how to obtain verification of the debt and that he has thirty days in which to do so. The Act further mandates the debt collector to cease all collection efforts if the consumer provides written notice that he or she disputes the debt or requests the name of the original creditor until the debt collector mails either the debt verification or creditor's name to the consumer. 15 U.S.C. S 1692g(b).

Congress enacted the Act " `to eliminate abusive debt collection practices' which `contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.' " Miller v. Payco-General American Credits, Inc., 943 F.2d 482, 483-84 (4th Cir. 1991) (quoting 15 U.S.C. SS 1692a and 1692e). Moreover, the debt validation provisions of section 1692g were included by Congress to guarantee that consumers would receive adequate notice of their rights under the law. Id. at 484 (citing S. Rep. No. 382, 95th Cong., 1st Sess. 4, 8, reprinted in 1977 U.S. Code Cong. & Admin. News 1695, 1699, 1702).

Thus, in order to comply with the requirements of section 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter --the required notice must also be conveyed effectively to the debtor. Id. (citing Swanson v. Southern Oregon Credit Serv., Inc., 869 F.2d 1222, 1224 (9th Cir. 1988)); see also Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991). Moreover, the validation notice required by the FDCPA "is to be interpreted from the perspective of the `least sophisticated debtor.' " Graziano, 950 F.2d at 111 (citing Baker v. G.C. Servs. Corp., 677 F.2d 775, 778 (9th Cir. 1982)).

Although we have not expounded upon the definition of the "least sophisticated debtor," other courts of appeals which have adopted that standard have. See, e.g., Savino v. Computer Credit, Inc., 164 F.3d 81 (2d Cir. 1998); Russell v. Equifax A.R.S., 74 F.3d 30, 34-35 (2d Cir. 1996); United States v. National Financial Serv., Inc., 98 F.3d 131, 136 (4th Cir. 1996); Smith v. Computer Credit, Inc. , 167 F.3d

7

1052, 1054 (6th Cir. 1999); and Terran v. Kaplan , 109 F.3d 1428, 1431-32 (9th Cir. 1997). In Russell, the court of appeals ruled that a validation notice "is overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights." 74 F.3d at 35. The Court of Appeals for the Second Circuit elaborated that a collection letter "is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." Id.

As the court of appeals explained in Smith, the "least sophisticated debtor" standard is " `lower than simply examining whether particular language would deceive or mislead a reasonable debtor.' " 167 F.3d at 1054 (quoting Swanson v. Southern Oregon Credit Serv., Inc., 869 F.2d 1222, 1227 (9th Cir. 1988) (demand for payment within 10 days and threatening debtor's credit rating if not paid was found to conflict directly with statutory validation requirements)). In choosing the "least sophisticated debtor" standard, another court of appeals has observed that this standard "comports with basic consumer-protection principles" enumerated by the United States Court of Appeals for the Second Circuit as follows:

> The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law. . . .

National Financial Services, 98 F.3d at 136 (quoting Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)). Thus, although this standard protects naive consumers, it also "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Id. (citing Clomon, 988 F.2d at 1319).

Applying the "least sophisticated debtor" standard, we noted in Graziano that "the notice must be in print sufficiently large to be read, and must be sufficiently prominent to be noticed." 950 F.2d at 111 (citing Swanson, 869 F.2d at 1225). For example, a collection letter will not

8

meet the requirements of the Act where the validation notice is printed on the back and the front of the letter does not contain any reference to the notice, or one in which the validation notice is overshadowed or contradicted by accompanying messages or notices from the debt collector. Id.; Miller, 943 F.2d at 484 (citations omitted).

In Graziano, the debt collector was an attorney who maintained a debt collection practice. The attorney sent Graziano a notice of a delinquent debt which included the required statements under section 1692g(a). The letter also threatened legal action unless the debt was resolved within 10 days. The validation notice was printed on the reverse side of the document; however, a statement appeared at the bottom of the front page as follows: "See reverse side for information regarding your legal rights!" We held that a reasonable probability existed that "the least sophisticated debtor, faced with a demand for payment within ten days and a threat of immediate legal action if payment is not made in that time, would be induced to overlook his statutory right to dispute the debt within thirty days." Id. (citing Swanson, 869 F.2d at 1225–26). Thus, we concluded that a notice of rights is not effectively communicated to the debtor when it is presented in conjunction with a contradictory demand such as the one in Graziano.

B.

Wilson argues that the first two paragraphs of Quadramed's letter overshadow and contradict the validation notice set forth in the third paragraph. In support of his argument, Wilson submits that the language in Quadramed's letter is no less demanding and contradictory than the debt collection letters found to have violated the Act in Graziano, Savino, Miller, and Rabideau v. Management Adjustment Bureau, 805 F.Supp. 1086 (W.D. N.Y. 1992). Moreover, Wilson proffers three district court decisions in support of his argument that a violation of section 1692g may still be found even though the words, "demand," "insist," or "command" are not used in a collection letter, so long as the letters lead the least sophisticated consumer to believe that "immediate payment" must be made to avoid further action. See

9

Jenkins v. Union Corp., 999 F.Supp. 1120, 1132-33 (N.D. Ill. 1998) (collectively, the language "URGENT," "assigned to our agency for immediate collection," and the" `strong' recommendation to contact the creditor to arrange for payment," overshadowed the validation notice by creating a confusing impression of urgency); Adams v. Law Offices of Stuckert & Yates, 926 F.Supp. 521, 527 (E.D. Pa. 1996) (debt collector misrepresented the nature of the consumer's rights under the Act by raising the possibility of both a lawsuit and damage to the debtor's credit rating in the absence of "prompt payment" and warning debtor to pay "immediately" in order to "avoid trouble"); and Velliard v. Mednick, 24 F.Supp.2d 863, 869 (N.D. Ill. 1998) (court found language stating creditor "shows this obligation to be due immediately" was the same as stating "make payment immediately" and therefore created confusion as to what would happen if debtor disputed validity of the debt).4

We find that, contrary to Wilson's argument, the collection letter did not violate section 1692g of the Act for the reason that the first two paragraphs of the collection letter neither overshadow nor contradict the validation notice. First of all, upon review of the physical characteristics and form of the letter, we have concluded that the first two paragraphs of the letter do not overshadow the validation notice. The validation notice was presented in the same font, size and color type-face as the first two paragraphs of the letter. Moreover, the required notice was set forth on the front page of the letter

_____

4. Both Jenkins and Velliard followed the Seventh Circuit's decision in Bartlett v. Heibl, 128 F.3d 497 (7th Cir. 1997). In Bartlett, the court of appeals undertook a "confusion" analysis to determine whether an unsophisticated debtor would be misled by the language in the collection letter. The court explained that there were three possible means of inducing confusion: (1) an actual contradiction; (2) overshadowing; and (3) the "failure to explain an apparent though not actual contradiction"-- the third means being the most common. 128 F.3d at 500. The court gave an example of the third type of confusion: where the letter both demands payment within thirty days and explains the consumer's right to demand validation within thirty days, confusion will result if the letter
does not also explain how these two rights fit together. Id. Bartlett is not
dispositive here since we have not found an actual contradiction, overshadowing, or an apparent contradiction.

10

immediately following the two paragraphs that Wilson contends overshadow and contradict the validation notice. Accordingly, Wilson's overshadowing claim must fail.

Second, an actual or apparent contradiction between the first two paragraphs and the third one containing the validation notice does not exist here.5  Unlike the collection letter in Graziano, which demanded payment within ten days and threatened immediate legal action if payment was not made in that time, Quadramed's letter makes no such demand or threat. Instead, Wilson is presented with two options: (1) an opportunity to pay the debt immediately and avoid further action, or (2) notify Quadramed within thirty days after receiving the collection letter that he disputes the validity of the debt. As written, the letter does not emphasize one option over the other, or suggest that Wilson forego the second option in favor of immediate payment. Thus, we find the least sophisticated debtor would not be induced to overlook his statutory right to dispute the debt within thirty days.

In so holding, we reject Wilson's argument that the statement "afford[ing him] an opportunity to pay immediately and avoid further action" is the equivalent of demanding payment within a period of less than thirty days. Indeed, in Burns v. Accelerated Bureau of Collections of Virginia, Inc., 828 F.Supp. 475, 477 (E.D. Mich. 1993), the district court found the request for payment information did not overshadow the validation notice, nor did it contain any information that directly conflicted with the validation notice. The language of the collection letter that the debtor claimed violated the Act stated:

> THE ABOVE ACCOUNT HAS BEEN LISTED WITH THIS AGENCY FOR IMMEDIATE COLLECTION. TIME IS OF THE ESSENCE. THEREFORE IT IS IMPORTANT THAT PAYMENT IN FULL FOR $3,547.46 BE MADE TODAY.

Id. at 476. The request for payment in Burns was immediately followed by two paragraphs setting forth the

---

5. Because we find that a contradiction, either actual or apparent, does not exist between the first two paragraphs and the third one, a reconciling statement, as required in Bartlett , is not needed here.

validation notice, in slightly smaller type. The court found that the request for payment did not contain a time limit. Id. at 477. The court further found that the words "time is of the essence" and "today" did not conflict with the thirty-day time period, but merely communicated to the debtor that the debt collector was interested in collecting the debt in a timely fashion. Id. The court thus concluded that not even the least sophisticated debtor would be mislead as to his rights by the letter. Id.

Quadramed's letter is similar to the one in Burns which was found not to have violated the Act. Both letters contained the validation notice on the front of the letter immediately following the contested language. Moreover, Quadramed's use of the word "immediately" was similarly used to convey its interest in collecting the debt in a timely fashion. We do not believe the least sophisticated debtor would interpret "afford you the opportunity to pay this bill immediately" as a demand for payment in less than thirty days, especially since this "opportunity" is followed, almost immediately, by the required notice of the right to dispute the debt.

In addition to Graziano, Quadramed's letter is distinguishable from the collection letters at issue in Savino, Miller, Rabideau, and Swanson, which were found to violate the Act because they contained "screaming" headlines or demands for payment within a period of less than thirty days. In Savino, the allegedly misleading language in the debt collection letter read as follows: "The hospital insists on immediate payment or a valid reason for your failure to make payment." Beneath the text of the letter appeared the following notice: "PLEASE SEE IMPORTANT NOTICE ON BACK." The validation information required under section 1692g was set forth in this notice on the back of the letter. The court of appeals concluded that the debt collector's letter "violate[d] the FDCPA because the language on the front of the [letter], when read in conjunction with the statutory debt validation on the reverse side, would `make the least sophisticated consumer uncertain as to her rights.' " 164 F.3d at 85 (citing Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996)). In reaching this conclusion, the court of appeals emphasized

that the debt collector's request for immediate payment did not, standing alone, violate the Act. Id. at 85-86. The violation of the Act consisted, rather, of the debt collector's decision to ask for immediate payment without also explaining that its demand did not override the consumer's rights under section 1692g to seek verification of the debt. Id. at 86.

The letter in Savino is distinguishable from Quadramed's letter in two important respects: (1) the debt collector "insists on immediate payment" and (2) the least sophisticated debtor could easily overlook his statutory right to dispute the debt because the required validation notice appeared on the back of the letter and all that the debtor is told on the front is to "[p]lease see important notice on back." No indication is given on the front of the letter as to the nature of the notice, i.e., the debtor's rights. The language insisting on payment in the Savino letter clearly overshadows the validation notice and would mislead the least sophisticated consumer into foregoing his statutory right to dispute the debt.

In Miller, the collection letter stated as follows. Across the top of the page and in red, boldfaced type appeared, "DEMAND FOR PAYMENT." In the middle of the page in red, boldfaced type appeared, "THIS IS A DEMAND FOR IMMEDIATE FULL PAYMENT OF YOUR DEBT," followed by, in black boldfaced type, "YOUR SERIOUSLY PAST DUE ACCOUNT HAS BEEN GIVEN TO US FOR IMMEDIATE ACTION. YOU HAVE HAD AMPLE TIME TO PAY YOUR DEBT, BUT YOU HAVE NOT. IF THERE IS A VALID REASON, PHONE US . . . TODAY. IF NOT, PAY US --

NOW." 943 F.2d at 483. The word "NOW" covered the bottom one-third of the page in white letters against a red background. At the bottom of the page, in very small (one-eighth of an inch) type, white letters against a red background, appeared, "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION." Id. The validation notice was contained in the notice on the reverse side.

The court of appeals held that the language in the Miller collection letter both contradicted and overshadowed the required validation notice, thereby preventing effective

13

communication of the notice. Id. at 484. The court further opined that the emphasis in the collection letter on "immediate" action contradicts the thirty-day period under the Act to dispute the debt. The court found that a consumer who received this collection letter could easily be confused between commands to respond "immediately," "now," and "today," and the thirty-day response period provided by the Act. The court concluded that "[s]creaming headlines, bright colors and huge lettering `all point to a deliberate policy on the part of the collector to evade the spirit of the notice statute, and mislead the debtor into disregarding the notice.' " Id. (quoting Ost v. Collection Bureau, Inc., 493 F.Supp. 701, 703 (D.N.D. 1980)). The offending language in the Miller letter, as well as the format, could not be more different from the Quadramed letter.

In Rabideau, two collection letters gave rise to a claimed violation of the Act. The first letter contained the following language:

> REFERRAL. YOUR CREDITOR HAS REFERRED YOUR
> ACCOUNT TO OUR COLLECTION AGENCY FOR
> IMMEDIATE COLLECTION. THIS IS A DEMAND FOR
> PAYMENT IN FULL TODAY. TO AVOID FURTHER
> CONTACT, RETURN THE BOTTOM SECTION OF THIS
> NOTICE WITH YOUR FULL PAYMENT TODAY! TO
> DISCUSS THIS DEMAND, CALL THE NUMBER LISTED
> BELOW.

805 F.Supp. at 1089. At the bottom of the front page was a detachable coupon to be enclosed for payment. Underneath the coupon, the following statement appeared: "SEE REVERSE SIDE FOR IMPORTANT INFORMATION." Id. at 1089-90. The validation notice was printed on the reverse side in a light grey ink on a light shade of grey computer paper, making it difficult to read, and in a type size less than 1/10" in size. The front of the letter was printed in a bolder type. The second letter in Rabideau contained the following statements:

> SECOND NOTICE. YOU HAVE BEEN PREVIOUSLY
> NOTIFIED TO CLEAR THE BALANCE. TO AVOID
> FURTHER COLLECTION MEASURES, YOUR
> REMITTANCE IN FULL MUST BE IN THIS OFFICE

14

           WITHIN (5) DAYS OF RECEIPT OF THIS NOTICE.
           SHOULD WE NOT HEAR FROM YOU, WE WILL
           ADVISE THE CREDITOR THAT YOU HAVE REFUSED
           TO PAY.

Id. at 1090.

The district court in Rabideau held that the demand for
immediate payment in both of the collection letters
overshadowed and contradicted the validation notice. Id. at
1094. The court held that the language in the first letter,
"that immediate payment will avoid further contact," is
contradictory to the statutory thirty-day period and a
misleading statement because immediate payment is not
the only step which may then be taken by the debtor to
avoid further contact. Id. With regard to the second letter,
the language demanding payment within five days of receipt
of the letter required the debtor to respond before the
expiration of the thirty-day period in violation of the Act.
Thus, the court concluded that by demanding immediate
payment without adequate notice of the debtor's right to
dispute the underlying debt, the collection letters
contradicted the validation notice contained in the letter. Id.
(citing our decision in Graziano, supra ). It is important to
note, however, that the court also held that the form of the
validation notice in Rabideau failed to apprise the least
sophisticated consumer adequately of the required notices.
Id. at 1093.

Just as the Savino letter encouraged the least
sophisticated debtor to overlook his statutory rights, so too
does the letter in Rabideau. The demand for immediate
payment coupled with the inadequate validation notice in
Rabideau create the confusion which misleads the least
sophisticated debtor in violation of the Act. On the other
hand, Quadramed's letter does not contain either an
immediate demand for payment or an inadequate validation
notice.

In Swanson, the following language appeared in bold-
faced type several times larger than the validation notice:

           IF THIS ACCOUNT IS PAID WITHIN THE NEXT 10
           DAYS IT WILL NOT BE RECORDED IN OUR MASTER

15

        FILE AS AN UNPAID COLLECTION ITEM. A GOOD
        CREDIT RATING-- IS YOUR MOST VALUABLE ASSET.
869 F.2d at 1225. The standard validation notice
immediately followed this statement in small, standard-face
type. The court of appeals found this notice to be
misleading in both form and content. In this regard, the
court of appeals explained:

> The required debt validation notice is placed at the very
> bottom of the form in small, ordinary face type,
> dwarfed by a bold faced, underlined message three
> times the size which dominates the center of the page.
> More importantly, the substance of the language
> stands in threatening contradiction to the text of the
> debt validation notice. The prominence and message of
> the "master file" and "most valuable asset" language,
> lead the least sophisticated debtor, and quite probably
> even the average debtor, only to one conclusion: he
> must ignore his right to take 30 days to verify his debt
> and act immediately or he will be remembered as a
> deadbeat in the "master file" of his local collection
> agency and will, accordingly, lose his "most valuable
> asset," his good credit rating.

Id. at 1225-26. Because the letter in Swanson invoked a
shorter response period and promised harm to the debtor if
the debt remained unpaid after ten days, the court of
appeals held that the letter violated section 1692g as it
"represent[ed] an attempt `on the part of the collection
agency to evade the spirit of the notice statute and mislead
the debtor into disregarding the [required debt validation]
notice.' " Id. at 1226 (quoting Ost, 493 F.Supp. at 703). We
do not find any similarity between the letter in Swanson
and the letter in this case.

C.

Quadramed's letter is more closely analogous to the
collection letters in Burns, supra, Terran v. Kaplan, 109
F.3d 1428 (9th Cir. 1997), and Vasquez v. Gertler & Gertler,
Ltd., 987 F.Supp. 652 (N.D. Ill. 1997), which were found
not to have overshadowed or contradicted the validation
notice. In Terran, the debtor received a collection letter

16

containing the following language: "Please be advised that
this office represents MONTGOMERY WARD CREDIT CORP
with whom you have an outstanding balance. . . . Unless
an immediate telephone call is made to J. SCOTT . . ., we
may find it necessary to recommend to our client that they
proceed with legal action." 109 F.3d at 1430. A validation
notice follows in the same size print.

In holding that the collection letter did not violate the
FDCPA, the Terran court held the request that the alleged
debtor immediately telephone a collection assistant did not
overshadow the language in the validation notice which
provided that the alleged debtor had thirty days to dispute
the debt. Id. at 1434. The court also noted that emphasis
was not placed on any particular statement except the
creditor's name and the name of the person to contact.
Moreover, the court found particularly significant the fact
that the challenged language does not require payment
"immediately," but merely requests a phone call. Id. The
court went on to note that a letter requesting the debtor
telephone the collection agency does not contradict the
thirty-day validation notice. According to the court, "[t]his
language simply encourages the debtor to communicate
with the debt collection agency. It does not threaten or
encourage the least sophisticated debtor to waive his
statutory right to challenge the validity of the debt." Id.

In reaching this conclusion, the Terran court noted that
every court of appeals case to have found a violation of
section 1692g in which the least sophisticated debtor
standard was applied involved a written communication
containing language which demanded payment within a
time period less than the statutory thirty-day period and
the demand was communicated in a format that
emphasized the duty to make payment and obscured the
fact that the debtor had thirty days to dispute the debt. Id.
at 1433 (citing National Fin. Servs., 98 F.3d at 139; Russell,
74 F.3d at 34; Graziano, 950 F.2d at 111; and Miller, 943
F.2d at 484).

Turning to Vasquez, we observe that the collection letter
there, after advising the debtor that the writer was retained
by the creditor to collect a debt from him, set forth the
required statutory thirty-day validation notice. After the

17

validation notice, the letter contained the following statement: "Kindly let me have your immediate attention and cooperation by sending me your payment or contacting me without further delay." 987 F.Supp. at 655. The district court did not find any violation of section 1692g for the following reasons:

> First, there is no direct contradiction -- nothing demands payment or any other action within a period shorter than thirty days. Nor does the letter contain language that "overshadows" the notice by threatening ominous action if Vasquez doesn't act quickly. There is not even an apparent contradiction that fails to explain how the thirty-day right to demand verificationfits together with a creditor's rights. Instead, the letter begins with the verification notice, right on the front of the letter, and does not hide it with an obscure reference to the reverse side of the letter, bury the notice in small print, or encourage its disregard in any way.

Id. at 657 (internal citations omitted). In contrast, the court noted that the letter asked for the debtor's immediate attention, a request that has never been found to violate section 1692g. Id. Thus, "[i]nstead of demanding conduct that is inconsistent with the debtor's thirty-day verification rights," the court found that the letter "simply provides the debtor with a possible course of action: payment (with no specified time limit) or contact (also with no time limit)." Id.

Like the letters in Terran and Vasquez , Quadramed's letter does not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt. Similarly, the letter here does not demand payment within a period of less than thirty days and the manner of presentation does not undercut or overshadow the message of the validation notice.

We are not persuaded to find a violation of section 1692g here based on the holdings in Jenkins v. Union Corp., Adams v. Law Offices of Stuckert & Yates, or Velliard v. Mednick, as Wilson suggests. All of these cases are distinguishable factually and therefore inapposite. The

18

letters in both Jenkins and Velliard involved overshadowing language which the district courts found created confusion as to the debtor's right to dispute the debt. The Quadramed letter does not create such confusion. The letter in Adams misrepresented the nature of the consumer's rights under the Act by raising the possibility of both a lawsuit and damage to the debtor's credit rating in the absence of "prompt" payment and warning the debtor to pay "immediately" in order to "avoid trouble." In this case, the letter does not contain any such threats which would overshadow the validation notice.6 Accordingly, we reject Wilson's argument to the contrary.

We hold, therefore, that neither the form nor the substance of Quadramed's letter overshadowed or contradicted the validation notice. Accordingly, as a matter of law, we do not find any violation of section 1692g of the Fair Debt Collection Practices Act based on the facts presented here.

III.

For the reasons set forth above, we will affirm the judgment of the District Court dismissing the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and denying Wilson's

_____

6. In determining the urgency of a demand for payment, courts have considered the nature of the threats of future action if payment is not made within the demand period. For example, general threats of future action against the debtor for nonpayment do not convey the same urgency and pressure upon the debtor to pay as threats of immediate legal action, reporting the debtor to the credit bureau, or causing a negative credit rating. See, e.g., Adams v. Law Offices of Stuckert & Yates, 926 F.Supp. 521, 527 (E.D. Pa. 1996). Where specific action is threatened for nonpayment, the least sophisticated debtor might feel that he has no other option but to pay, in which case such threats have been found to overshadow the validation notice and cause the debtor to overlook his statutory right to dispute the debt. Wefind the language in Quadramed's letter, "avoid further action," does not convey a sense of urgency or a threat of specific action which overshadows the validation notice. Accordingly, we find the least sophisticated debtor in this case would not feel pressured to overlook his statutory right to dispute the validity of the debt after reading Quadramed's letter.

19

motion for partial summary judgment and for class certification.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

20