**Mariusz G. JARZYNA, Plaintiff,**

v.

**HOME PROPERTIES, L.P., et al., Defendants.**

**Civil Action No. 10–4191.**

United States District Court, E.D. Pennsylvania.

Feb. 4, 2011.

Kenneth A. Jacobsen, Jacobsen Law Offices LLC, Wallingford, PA, Joseph A. O'Keefe, Konrad B. Jarzyna, O'Keefe & Sher PC, Kutztown, PA, for Plaintiff.

Curtis P. Cheyney, III, Swartz Campbell & Detweiler, Philadelphia, PA, George E. Saba, Jr., Jonathan C. Deisher, Swartz Campbell, LLC, Allentown, PA, Ronald S. Canter, The Law Offices of Ronald S. Canter LLC, Rockville, MD, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. INTRODUCTION

Mariusz G. Jarzyna ("Plaintiff") has brought a five count complaint against Home Properties, L.P. ("L.P.") and Fair Collections and Outsourcing, Inc. ("FCO") (collectively, "Defendants"). Count I of Plaintiff's complaint is asserted against FCO only and alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). Counts II thru V are against both FCO and L.P. Count II alleges a violation of the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Count III alleges a violation of Pennsylvania's Fair Credit Extension Uniformity Act, 73 Pa. Stat. Ann. § 2270.1 *et seq.* ("FCEU"). Count IV alleges a violation of Pennsylvania's Unfair

Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201–1 *et seq.* ("UTPCPL"). Count V alleges a violation of 18 Pa. Cons.Stat. Ann. § 7311.

## II. BACKGROUND [1]

Plaintiff brings this action against Defendants L.P and FCO on behalf of himself and others similarly situated. Defendant L.P is owned by Home Properties, Inc. Home Properties, Inc. conducts its business in Pennsylvania through L.P. Defendant L.P. is the management entity appointed by Home Properties, Inc. to manage and administer the Glen Brook Apartments in Glendon, PA ("Glen Brook"). Defendant FCO is a national debt collection company and consumer reporting agency ("CRA"). (Amended Compl. ¶ 5–18.)

Plaintiff alleges that he resided at Glen Brook pursuant to a lease agreement with L.P. Plaintiff was subjected to L.P.'s and FCO's tenant screening process. At the end of the lease's stated tenancy, Plaintiff retained possession of the apartment and converted his lease to a month-to-month lease. On September 1, 2009, Plaintiff gave the required one month's notice stating that he planned to vacate on October 1, 2009. Defendant L.P. worked with Plaintiff and tried to make him a deal on another apartment, but this deal fell through. When this deal fell through, Plaintiff again put in his notice.

On October 23, 2009, after giving his second notice, Plaintiff received a late notice under his door with a balance due of $1,300. (*Id.* at Exh. D.) On October 31, 2009, Plaintiff tendered the apartment back. On November 1, 2009, Plaintiff checked his online balance with Glen Brook and learned that his balance increased to $2,200. Additionally, Defendant L.P. failed to send Plaintiff an accounting of his $500.00 security deposit within the statutorily prescribed 30–day period. As a result of this delay, Plaintiff alleges that L.P. waived any right to claim and/or collect this money under the lease agreement. (*Id.* at ¶ 47–56.)

On June 21, 2010, L.P. contacted Plaintiff via FCO. Plaintiff received a collection letter from FCO for alleged non-payment of a "past due account" in the amount of $1,897.92. (*Id.* at Exh. E.) On July 17, 2010, Plaintiff timely sent a letter to FCO disputing the debt and asking for verification. (*Id.* at Exh. F.) Despite Plaintiff's letter, Defendant FCO continued its collection actions. On July 23, 2010, FCO furnished Plaintiff with an invoice from Glen Brook as purported verification. (*Id.* at Exh. G.) Then, on July 28, 2010, FCO called Plaintiff's cell phone in an effort to collect the debt and also contacted his relatives seeking information as to Plaintiff's location. (*Id.* at ¶ 57–61.)

Plaintiff alleges that FCO creates and furnishes information for its clients (i.e., property managers such as L.P.), and it does this as an active contributor and member of the National Multifamily Housing Council ("NMHC") and in accordance with NMHC's promulgation of Multifamily Information and Transactions Standards ("MITS"). A MITS Standard is a set of definitions and rules to facilitate the automatic transfer of data between different types of software packages that are used regularly by owners and managers of multifamily real estate projects. (*Id.* at ¶ 14.)

Plaintiff states that pursuant to MITS, L.P. and FCO utilize standard, automated platforms to perform resident screening and collection activities. When a tenant comes to L.P. or any other FCO client

---

**1.** The Court accepts, as true, all well pleaded allegations in the complaint and views them in the light most favorable to plaintiff.

seeking to rent an apartment, the tenant fills out an "application" which is then entered into the property managers' (i.e., L.P.'s) system and software. This information is then transmitted pursuant to a common MITS Standard to FCO. FCO's computer systems then trace personal identifiers against data compiled by other MITS participants in combination with data obtained from other CRAs such as Equifax, Experian, and TransUnion. The end result of FCO's efforts is what FCO and the industry have labeled a "Credit Report."

By regularly compiling and selling such "Credit Reports" for a fee or through dues or other cooperative basis, FCO operates as a CRA. (*Id.* at ¶ 20–29.) The FCRA regulates the collection, maintenance, and disclosure of consumer report information by CRAs. Despite the fact that Defendant FCO assembles and compiles consumer information in the form of its Credit Report for distribution and sale to apartment complex owners and managers and other business entities on a regular basis nationwide, FCO does not provide to consumers disclosure of all of the information in FCO's files that pertain to those consumers. Nor does FCO disclose to consumers the notice of their rights under the FCRA. (*Id.* at ¶ 32.)

In sum, Plaintiff alleges that he is a "consumer," that FCO and L.P. are "debt collectors," and that each was attempting to collect a "debt" under the FDCPA. Moreover, Plaintiff alleges that FCO is both a "furnisher" and a "credit reporting agency" under the FCRA. Based on these classifications, Plaintiff argues that both Defendants violated federal and state law.

## III. DISCUSSION

Both Defendants have filed motions to dismiss based on Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court will first address Defendant FCO's motion and then it will discuss L.P.'s motion.

### A. Legal Standard for Motion to Dismiss

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *DeBenedictis v. Merrill Lynch & Co., Inc.*, 492 F.3d 209, 215 (3d Cir.2007) (internal citations omitted). In order to withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n. 3, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955 (internal citation omitted). Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (cited with approval in *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. *See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir.2009). A claim possesses such plausibility " 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949,

173 L.Ed.2d 868 (2009)). In deciding a Rule 12(b)(6) motion, the court is to limit its inquiry to the facts alleged in the complaint and its attachments, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. *See Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

### B. *FCO's Motion to Dismiss* [2]

With this standard of review in mind, the Court turns to consider the merits of Defendant FCO's motion to dismiss.

#### 1. *Count I—Violations of the FCRA*

■ Count I of Plaintiff's complaint alleges violations of the FCRA. In particular, Plaintiff claims that Defendant FCO violated the FCRA by negligently, willfully, and/or recklessly engaging in certain conduct (i.e., utilizing credit reports for purposes other than those contemplated under the FCRA). FCO argues that an examination of each of the claims demonstrates that Plaintiff has failed to allege that FCO, an alleged CRA, engaged in any conduct that was directed at Plaintiff. Further, FCO argues that Plaintiff did not make any request or demand on FCO that would require a response thus triggering the requirements of the FCRA.

Plaintiff has alleged facts that, if true, would establish that FCO is a CRA subject to various provisions in the FCRA. For example, in Plaintiff's complaint, Plaintiff points out that FCO refers to one of the products it regularly prepares and sells as a "Credit Report." (Amended Compl. ¶ 1.) Moreover, in Plaintiff's response to Defendant FCO's motion to dismiss, Plaintiff cites language on FCO's website explicitly describing FCO as "an approved credit reporting agency." (Doc. no. 36 at 31.) Based on Plaintiff's allegations and for purposes of adjudicating this motion to dismiss, the Court finds that FCO is a CRA.[3]

As a CRA, FCO is subject to the disclosure, investigation, reinvestigation, and dispute resolution requirements of the FCRA. Plaintiff has alleged facts that, if true, establish that FCO has not abided by the requirements set forth in the FCRA. In paragraphs 30–34 of Plaintiff's amended complaint, Plaintiff specifically alleges that FCO does not disclose to consumers all the information in FCO's files that pertain to those consumers nor does it even disclose to those consumers that it is operating and functioning as a CRA. Additionally, when a consumer disputes the completeness or accuracy of any information contained in a credit report, the CRA must conduct a reasonable reinvestigation. *Cushman v. Trans Union Corp.,* 115 F.3d 220, 223–24 (3d Cir.1997). The FCRA requires the CRA to do more than verify a debt with the original source. *Dixon–Rollins v. Experian Info. Solutions, Inc., et al.,* No. 09–0646, 2010 WL 3749454, at *3–5 (E.D.Pa. Sept. 23, 2010). Here, Plaintiff and other consumers could not possibly know of the existence of inaccurate information because FCO, the CRA, did not disclose the information to the consumer as required by the FCRA.

Based on the foregoing, Defendant FCO's motion to dismiss Count I will be denied.

#### 2. *Count II—Violations of the FDCPA*

■ Section 15 U.S.C. § 1692g affirmatively requires a debt collector to promptly send certain written information to the

---

2. Defendant FCO's motion to file a reply brief (doc. no. 38.) will be denied as moot.

3. Of course, if further discovery reveals that FCO is not a CRA then the obligations set forth in the FCRA will not apply to FCO.

consumer and to refrain from collection efforts on a debt which has been disputed by a consumer. Defendant argues that it adequately complied with the notification requirements of § 1692g by sending a letter to Plaintiff, dated June 21, 2010. (Amended Compl. at Exh. E.) Additionally, Defendant alleges that it adequately complied with the verification of disputed debts requirement by sending a letter, dated July 23, 2010. (*Id.* at Exh. G.) Plaintiff, however, argues that neither of these letters were sufficient to satisfy the requirements of § 1692g.[4]

As to the, June 21, 2010, letter notifying Plaintiff of a debt, Plaintiff has alleged facts that, if true, would entitle Plaintiff to relief. The Third Circuit has stated that "in order to comply with the requirements of section 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter— the required notice must also be conveyed effectively to the debtor." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000). Moreover, the *Wilson* Court stated that the notice "is to be interpreted from the perspective of the 'least sophisticated debtor.'" *Id.* (internal marks omitted). Whether the letter meets the "least sophisticated debtor" standard is a question of law. *See id.* at 353 n. 2.

In *Wilson*, the collection letter was deemed sufficient. In that case, the letter had three paragraphs, all three paragraphs were printed in the same font, size, and color, and above the body of the letter was the statement: "THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." *Id.* at 352. The *Wilson* Court agreed with the district court that the letter did not violate the requirements of § 1692g. The district

court had based its holding on the fact that, as to the substance of the letter, it "does not make an explicit demand for payment, but states that the defendant shall offer the plaintiff an opportunity to make payment." *Id.* (internal marks omitted). "Moreover, the court specifically found that the letter [did] not request payment within a time period shorter than the statutory thirty-day period." *Id.*

In the case at bar, the letter provided by FCO to Plaintiff differs from that in *Wilson*. For example, in bold, centered text are the words "**Payment demand— $1,897.92.**" Additionally, in a bold highlighted text box are the words "Pay in full online anytime." The Court finds that, upon receipt of the letter, the least sophisticated debtor would not know he or she had a right to dispute the debt and was not required to pay it in full as soon as possible.

In the letter provided to Plaintiff there is no prominent mention of the fact that Plaintiff had a statutory right to dispute the demand within thirty days. Rather, in text much smaller than the demand, at the bottom of the page, is information regarding Plaintiff's rights in relation to dispute of the debt. Although this information is present, it is overshadowed by the bold text demanding payment and requesting payment in full at anytime.

Moreover, the fact that the letter states, at the top, in a bold text box, "pay in full online anytime" suggests conduct inconsistent with the debtor's thirty-day verification rights. Previously, the Third Circuit held that a notification was improper although it included the statutory right to dispute the debt within thirty days because the statutory right information was overshadowed by a term stating that the payment was due within ten days. *Compare*

---

4. During oral argument, Plaintiff referred to the existence of other letters sent to Plaintiff from FCO prior to the June 21, 2010 letter. Those letters are not part of the complaint; therefore, they will not be considered by the Court.

*Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir.1991) ("[T]he notice must not be overshadowed or contradicted by accompanying messages from the debt collector."), *with Vasquez v. Gertler & Gertler, Ltd.,* 987 F.Supp. 652 (N.D.Ill.1997) (stating letter valid because no emphasis was placed on any particular statement and letter only requested Plaintiff contact debtor), *Terran v. Kaplan,* 109 F.3d 1428 (9th Cir.1997) (stating that letter valid because it began with verification notice on the front of the letter). Based on the aforementioned, Plaintiff has stated a claim upon which relief could be granted.

Moreover, Defendant FCO argues that it did not violate Plaintiff's rights by continuing to investigate after Plaintiff disputed the debt because it verified the debt. Defendant FCO claims it provided verification by simply copying the same bill or invoice sent in the June 21, 2010 letter. Plaintiff has adequately pleaded that Defendant violated this requirement of the FDCPA. The verification must "include[ ] at least a colorable claim of entitlement to the debt...." *See Casterline v. Credit Protective Services of I.C. Systems, Inc.,* 1991 U.S. Dist. LEXIS 21728, at *5–6 (D.N.J. June 26, 1991). Simply copying the invoice used in the dunning letter is insufficient.

Based on the foregoing, Defendant's motion to dismiss Count II will be denied.

3. *Count III—Violations of the FCEU*

■ The FCEU prohibits unfair or deceptive acts or practices with regard to the collection of debts. 73 Pa. Stat. Ann. § 2270.2. Violation of the FDCPA is a per se violation of the FCEU. § 2270.4(a). Defendant argues that Plaintiff's FDCPA claim fails; therefore, this derivative action fails. However, the Court did not grant Defendant's motion to dismiss Plaintiff's FDCPA claim pleaded in Count II; consequently, a claim pursuant to the FCEU is permissible.

Based on the foregoing, Defendant's motion to dismiss Count III will be denied.

4. *Count IV–Violations of the UTPCPL*

■ Title 73, section 201–9.2 of the Pennsylvania statutes permits a "person who purchases or leases goods or services primarily for personal, family or household purposes" to bring a private cause of action under the UTPCPL provided the consumer suffered an "ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by [the UTPCPL]." *See Commonwealth v. Monumental Props., Inc.,* 459 Pa. 450, 329 A.2d 812, 817 (1974) (stating the UTPCPL "is to be construed liberally to effect its object of preventing unfair or deceptive practices"); *Brunwasser v. Trans World Airlines, Inc.,* 541 F.Supp. 1338, 1346–47 (W.D.Pa.1982) (holding that the term "ascertainable loss" must be liberally construed and that "the ascertainable loss requirement of this act is designed merely to insure that individuals bringing suit have in fact been damaged by a deceptive trade practice").

Defendant argues that although Plaintiff alleged that he leased "goods or services" (i.e., an apartment) for primarily personal, family, or household purposes, Plaintiff has failed to assert that he sustained any ascertainable loss of money or property as a result of Defendant's alleged unlawful conduct. Plaintiff, however, has stated facts that, if true, establish he has sustained an "ascertainable loss." Plaintiff has alleged that his security deposit was unlawfully withheld. (Amended Compl. ¶ 56.) Additionally, Plaintiff alleges that he was forced to retain counsel to resist FCO's collection efforts and in his prayer for relief requests all reasonable attorneys' fees.

Based on the foregoing, Defendant's motion to dismiss Count IV will be denied.

### 5. Count V—Violations of 18 Pa. Cons.Stat. Ann. § 7311

■ Defendant states that Count V should be dismissed because a violation of "this statute does not create an implied civil remedy for a person claiming to be injured as a result of an alleged unlawful collation practice." (Doc. no. 33 at 19.) FCO's argument is that this section does not provide a private remedy or right of action and, as a criminal statute, can only be enforced through criminal prosecution.

While there is a dearth of case law as to whether § 7311 provides an implied cause of action, Defendant FCO and Plaintiff provide two cases that suggest contradictory conclusions. Defendant points to a court of common pleas case from 1974 which held that given the plain language of the statute and the lack of legislative guidance, no implied civil remedy should be permitted. *Benjamin v. Global Collection Agency,* No. 2814 of 1973, 1974 WL 15915 (Pa.Com.Pl. August 21, 1974). The *Benjamin* Court stated that "if legislation was intended to create a remedy in addition to the penalty therein stated it simply could have and would have been drafted accordingly." *Id.* On the other hand, Plaintiff cites a more recent case from the commonwealth court which is not directly on point but appears to imply that a civil action may be permissible under the statute. *Nolan v. Dep't of Public Welfare,* 673 A.2d 414 (Pa.Commw.Ct.1996) (reaching the merits of the case as opposed to dismissing the case solely on the basis that § 7311 is a criminal statute).

Given the lack of case law, the Court is required to predict how the Pennsylvania Supreme Court would rule on this issue. When determining whether a statute implicitly creates a private remedy, the Pennsylvania Supreme Court is guided by a three-prong analysis enunciated in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *See Estate of Witthoeft v. Kiskaddon,* 557 Pa. 340, 733 A.2d 623, 626 (1999) (stating *Cort* decision offers a beneficial framework within which to analyze whether the statute at issue implicitly creates a private right of action). The three factors under the *Cort* decision are:

> First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,'—that is, does the statute create a ... right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

*Id.* (quoting *Cort,* 422 U.S. at 78, 95 S.Ct. 2080).

Plaintiff merely offers a bald assertion that § 7311 provides a civil remedy. Plaintiff fails to point to any authority to support this proposition. Moreover, Plaintiff has failed to address any of the *Cort* factors. In the absence of any explanation of the policy behind the statute and whether the Pennsylvania legislature intended to provide a private cause of action, the Court will not presume that the Pennsylvania Supreme Court would find that § 7311 implies a civil remedy.

Based on the foregoing, Defendant FCO's motion to dismiss Count V will be granted.

### C. L.P.'s Motion to Dismiss [5]

### 1. Count II—Violations of the FDCPA

■ The crux of Defendant L.P.'s argument is that it is not subject to the FDCPA because it is not a debt collector

---

5. In Defendant L.P.'s briefing, L.P. argues that the FCRA claim stated in Count I should be dismissed as to L.P. Defendant's motion is denied because Plaintiff did not plead a cause of action as to L.P. for a violation of Count I. In Plaintiff's briefing, Plaintiff states "[s]ince Plaintiff does not allege or assert any claims

subject to the FDCPA based on the corporate affiliation exemption in § 1692a(6)(B). That section states the following:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—
>
> (B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts.

15 U.S.C. § 1692a(6)(B).

In Plaintiff's complaint, Plaintiff alleges that L.P. is an "operating partnership" owned by Home Properties, Inc. Moreover, Plaintiff specifically alleges that L.P. is the entity through which Home Properties, Inc. conducts and manages its business in Pennsylvania. (Amended Compl. ¶ 8–9.) Additionally, the lease agreement provided as an exhibit identifies L.P. as the manager. (*Id.* at Exh. A.) As such, Plaintiff is asserting that L.P. was attempting to collect debts for its owner and corporate affiliate, Home Properties, Inc. Based on the foregoing, Defendant L.P., acting as a debt collector, squarely falls into the corporate affiliate exemption.

However, Plaintiff argues that L.P. is subject to certain language in § 1962a(6) which places an exempt creditor back into § 1962a(6)'s ambit. A creditor is subject to the FDCPA when the "creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts . . . ." § 1962a(6). Plaintiff's argument, however, is misplaced because the language Plaintiff points to relates to creditors and, as discussed above, L.P. alleges and has pointed to facts indicating that it acted as a debt collector for its corporate affiliate. Moreover, Plaintiff classifies L.P. as a debt collector in its complaint. (*Id.* at ¶ 8.) Consequently, Defendant L.P., which rightfully claims the corporate affiliate exemption, cannot be brought back into the ambit of § 1962a(6) based on language relating to creditors.

Further evidence that the corporate affiliate exemption applies to L.P. and that L.P. is a debt collector subject to the corporate affiliate exemption is found in the demand letter sent to Plaintiff from FCO where Home Properties, Inc. is listed as the creditor.

Because Plaintiff has not pleaded facts indicating that the corporate affiliate exemption does not apply to Defendant L.P, Defendant L.P.'s motion to dismiss Count II will be granted.[6]

against Home under the FCRA, that statute cannot possibly preempt valid claims brought under a completely separate and distinct state statute." (Doc. no. 41 at 27.)

6. As discussed in section III. A. of this memorandum, the Court must accept, as true, all allegations in the complaint and view them in the light most favorable to the non-moving

### 2. *Count III—Violations of the FCEU*

■ The FCEU applies to both debt collectors and creditors. *See* 73 Pa. Stat. Ann. § 2270.4. As to debt collectors, a violation of the FDCPA establishes a violation of the FCEU. *Id.* As to creditors, a creditor is deemed liable if it engages in various conduct set forth in § 2270.4(b). These prohibited activities mirror those activities proscribed by the FDCPA.

Consequently, liability under the FCEU does not turn on whether Defendant L.P. is defined as a creditor or debt collector. Here, Plaintiff has alleged facts that, if true, establish L.P. engaged in activities that violate the FCEU. For example, Plaintiff claims that he received three different notices from L.P. each alleging that Plaintiff owed a different balance. (Amended Compl. ¶ 52–57.) Additionally, Plaintiff alleges that he was not sent his deposit nor sent a written accounting of the deposit within the statutorily prescribed 30–day period. Viewing these facts in the light most favorable to Plaintiff, Plaintiff has adequately alleged that Defendant engaged in deceptive debt collection practices.

Based on the foregoing, Defendant L.P.'s motion to dismiss Count III will be denied.

### 3. *Count IV—Violations of the UTPCPL*

■ Defendant L.P. argues that Plaintiff has not adequately stated a cause of action under the UTPCPL. However, § 2270.5(a) of the FCEU states "[i]f a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the act of December 17, 1968 (P.L. 1224, No. 387), known as the Unfair Trade Practices and Consumer Protection Law." Giv-

en that the Court did not dismiss Plaintiff's claim under the FCEU, Plaintiff has pled facts that, if true, give rise to a violation of the UTPCPL. Furthermore, Defendant argues that Plaintiff has not suffered an ascertainable loss as required by the UTPCPL. Plaintiff, however, specifically alleges that Defendant unlawfully withheld Plaintiff's security deposit, which is clearly an "ascertainable loss" under the UTPCPL.

Based on the aforementioned, Defendant's motion to dismiss Count IV will be denied.

### 4. *Count V–Violations of 18 Pa. Stat. Ann. § 7311*

Defendant L.P.'s motion to dismiss Count V will be granted for the same reasons as stated in section III. B. 5.

### 5. *Defendant L.P.'s Request for Misjoinder*

■ Defendant L.P. requests that the Court permit misjoinder. Defendant argues that Plaintiff's claims against Defendant FCO and L.P. do not overlap. The Federal Rules of Civil Procedure provide:

> Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed.R.Civ.P. 20. Here, all of Plaintiffs' claims against both Defendants arise out of the same common nucleus of facts. In short, Plaintiff alleges that L.P. and FCO worked together to collect debts owed

party. Based on this standard, the Court finds that L.P. is a debt collector and Home Properties, Inc. is a creditor. It may be, however, that on a fuller record L.P. may be

found to be a creditor. This issue will be more fully developed at the class certification or motion for summary judgment stage.

based on Plaintiff residing in one of L.P.'s apartments.

Consequently, misjoinder is inappropriate and Defendant's motion for misjoinder will be denied.

### 6. Defendant L.P.'s Request for Denial of Supplemental Jurisdiction

Defendant L.P.'s motion to deny supplemental jurisdiction will be denied. Even though the Court dismissed the one federal claim brought against Defendant L.P., the pendency of federal claims against co-defendant FCO permits jurisdiction. The United States Code provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. Given that the Court has retained jurisdiction over all federal claims against FCO, the Court has jurisdiction over the case. Additionally, as stated in the discussion of misjoinder, all claims arise out of the same common nucleus of facts. Consequently, the exercise of supplemental jurisdiction is appropriate.

Based on the foregoing, Defendant's motion to deny supplemental jurisdiction will be denied.

### D. FCO's Motion to Stay Discovery (Doc. no. 44)

Defendant FCO has filed a motion to stay discovery pending decisions on the motions to dismiss. This motion will be denied as moot.

## IV. CONCLUSION

For the reasons noted above, Defendant FCO's motion to dismiss will be granted as to Count V and denied as to all other Counts. Defendant L.P.'s motion to dismiss will be granted as to Counts II and V

and denied as to Counts I, III, and IV. An appropriate Order will follow.

### ORDER

**AND NOW,** this **4th** day of **February, 2011,** it is hereby **ORDERED** that Defendant Fair Collections and Outsourcing Inc.'s Motion to Dismiss (doc. no. 33) is **GRANTED** as to Count V and **DENIED** as to Counts I–IV. It is **FURTHER ORDERED** that Defendant Home Properties, L.P.'s Motion to Dismiss (doc. no. 37) is **GRANTED** as to Counts II and V and **DENIED** as to Counts I, III, and IV. It is **FURTHER ORDERED** that Plaintiff's motion to stay discovery pending decisions on the parties' motions to dismiss (doc. no. 44) is **DENIED** as moot. It is **FURTHER ORDERED** that the Court's order issued orally from the bench to stay discovery pending the adjudication of the motions to dismiss is **VACATED.**

**AND IT IS SO ORDERED.**