**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1846
_____

RAY V. CAPRIO, on behalf of himself and
all others similarly situated,

Appellant

v.

HEALTHCARE REVENUE RECOVERY GROUP, LLC;
JOHN DOES 1-25
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-11-cv-02877)
District Judge: Hon. Dennis M. Cavanaugh
_____

Argued December 14, 2012

BEFORE: GREENAWAY, JR., GREENBERG, and
COWEN,  Circuit Judges

(Filed: March 1, 2013 )

Joseph K. Jones, Esq. (Argued)
375 Passaic Avenue, Suite 100
Fairfield, NJ 07004

Counsel for Appellant

Richard J. Perr, Esq. (Argued)
Fineman, Krekstein & Harris
1735 Market Street
Mellon Bank Center, Suite 600
Philadelphia, PA 19103

Counsel for Appellee

_____

OPINION
_____

COWEN, Circuit Judge.

Plaintiff Ray V. Caprio filed a complaint against Defendant Healthcare Revenue Recovery Group, LLC ("HRRG"), alleging two claims under the Fair Debt Collection Practices Act ("FDCPA"). Caprio appeals from the order of the United States District Court for the District of New Jersey granting HRRG's motion for judgment on the pleadings. We will vacate the District Court's order and will remand for further proceedings consistent with this opinion.\

I.

2

It is uncontested that "HRRG is primarily in the business of acquiring and/or collecting debts that are allegedly due to another." (JA Vol. II at 6.) HRRG therefore acknowledges that, at least in certain circumstances, it may fall under the FDCPA's definition of a "debt collector." See 15 U.S.C. § 1692a(6) ("The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."). This case arose out of a December 7, 2010 letter that HRRG sent to Caprio in an attempt to collect an alleged debt that Caprio owed to another.

The body of this one-page and double-sided "Collection Letter" consisted of the following four paragraphs:

> The health care provider(s) listed below, recently hired Healthcare Revenue Recovery Group, LLC (HRRG) to collect the balance on this account. Our client's records show you as the person responsible for payment of the charges for **PHYSICIAN SERVICES.**

> If we can answer any questions, or if you feel you do not owe this amount, **please call** us toll free at **800-984-9115** or write us at the above address. This is an attempt to collect a debt. Any information obtained will be used for that purpose. (NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.)

3

> You may send payment in full. Just fill in your credit card information on the reverse, or enclose your check/money order **payable to the creditor** along with the payment voucher below. The reply envelope provided needs no postage. Unless specified, your payment will be applied to the oldest balance first.
>
> We hope to have your full cooperation in this collection matter.

(JA Vol. II at 16.)

The letterhead (on the left side at the top of the document) included a stylized "HRRG" logo and, in all capital letters and in a seemingly larger font than the body of the Collection Letter, a Florida post office box mailing address. Using an even larger font, the letterhead (on the right side at the top of the document) also included the same toll-free telephone number provided in the second paragraph. A Spanish-language toll-free telephone number, evidently in the same font size used for the mailing address, appeared right below this number. Furthermore, the Collection Letter included both HRRG's web address ("hrrgcollections.com") as well as the following subject line: "Re: **JIM002 Validation Notification**." (Id.) The bottom part of the Collection Letter then consisted of a detachable payment slip with an Ohio post office box mailing address and a space for the "Amount Enclosed." This slip expressly identified the creditor ("EMER PHY ASSOC NORTH JERS"), the account

4

numbers, the debtor's name ("Regarding CAPRIO, RAY V."), the amount owed ("$49.51"), and the service date ("07/06/10") . There was a form to provide credit card (and insurance) information on the reverse side of the slip.

The reverse side of the Collection Letter (at the center of the page above the slip) contained the following statement, apparently in the same (or at least a very similar) font size as the letterhead's mailing address:

> This is an attempt to collect a debt from a debt collection agency.
> Any information obtained will be used for that purpose.
>
> Pursuant to Sec. 809 of the Fair Debt Collection Practices Act, unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgement [sic] and mail you a copy of such judgement [sic] or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

5

(Id. at 17.)  This statement is known as the "Validation Notice."

Based on this Collection Letter, Caprio filed a putative class action complaint under the FDCPA.  He specifically alleged that HRRG violated 15 U.S.C. §1692g because "the least sophisticated consumer would believe that he should choose either of the instructions as set forth in the second paragraph of the notice and either call the toll free number *or* write to HRRG at the address on the letter, to dispute the alleged debt." (Id. at 11.)  However, a dispute of a debt must be in writing in order to be effective in this Circuit.  HRRG also allegedly violated 15 U.S.C. § 1692e(10) by "providing language that misrepresents to the least sophisticated consumer that she can call [sic] either call the toll free number *or* write to HRRG at the address on the letter, to dispute the alleged debt, when in fact she must dispute the alleged debt in writing for the dispute to be effective." (Id. at 12.)

After filing its answer, HRRG moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  The District Court then granted HRRG's motion.  See Caprio v. HRRG, Civil Action No. 2:11-cv-2877 (DMC) (MF), 2012 WL 847486 (D.N.J. Mar. 9, 2012).

II.

The District Court had jurisdiction over this FDCPA proceeding pursuant to 28 U.S.C. § 1331.  This Court has

6

appellate jurisdiction under 28 U.S.C. § 1291.

A district court's order granting a Rule 12(c) motion for judgment on the pleadings is generally reviewed under a plenary standard. See, e.g., Allstate Prop. & Cas. Ins. Co. v. Squires, 667 F.3d 388, 390 (3d Cir. 2012). In turn, a motion for judgment on the pleadings based on the theory that the plaintiff failed to state a claim is reviewed under the same standards that apply to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Revell v. Port. Auth. of N.Y. & N.J., 598 F.3d 128, 134 (3d Cir. 2010), cert. denied, 131 S. Ct. 995 (2011). In order to survive a motion to dismiss, the complaint must contain sufficient factual matter, which if accepted as true, states a facially plausible claim for relief. Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012).

The current appeal generally presents this Court with a legal inquiry. In particular, "whether language in a collection letter contradicts or overshadows the validation notice is a question of law." Wilson v. Quadramed Corp., 225 F.3d 350, 353 n.2 (3d Cir. 2000).

III.

## A. The § 1692g Claim

Both the District Court as well as the parties themselves devote most of their attention to Caprio's claim under § 1692g. Although presenting us with an unusual set of circumstances, we ultimately conclude that the District Court committed reversible error by granting judgment on the

7

pleadings in favor of HRRG as to this § 1692g claim.

Section 1692g(a) specifically requires a debt collector to provide the following information to the debtor:

**(1)** the amount of the debt;

**(2)** the name of the creditor to whom the debt is owed;

**(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

**(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

"Paragraphs 3 through 5 of section 1692g(a) contain the validation notice—the statements that inform the consumer how to obtain verification of the debt and that he has thirty days in which to do so." Wilson, 225 F.3d at 353-54. Section 1692g(b) then states, in part, that:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. . . .

Accordingly, a debt collector must "cease all collection efforts if the consumer provides written notice that he or she disputes the debt or requests the name of the original creditor

9

until the debt collector mails either the debt verification or creditor's name to the consumer." Wilson, 225 F.3d at 354 (citing § 1692g(b)); see also Graziano v. Harrison, 950 F.2d 107, 112 (3d Cir. 1991) ("Subsection (b) states that if the debtor disputes the debt in writing within thirty days, the debt collector must cease collection efforts until the debt collector has verified the debt." (footnote omitted)). In Graziano v. Harrison, 950 F.2d 107 (3d Cir. 1991), we specifically concluded that "subsection (a)(3), like subsections (a)(4) and (a)(5), contemplates that any dispute, to be effective, must be in writing," id. at 112.

Congress adopted "the debt validation provisions of section 1692g" to guarantee that consumers would receive "adequate notice" of their rights under the FDCPA. Wilson, 225 F.3d at 354 (citing Miller v. Payco-General Am. Credits, Inc., 943 F.2d 482, 484 (4th Cir. 1991)). More broadly, the FDCPA was enacted in order to eliminate abusive debt collection practices, which contribute to the number of personal bankruptcies, marital instability, loss of employment, and invasions of privacy. See, e.g., 15 U.S.C. § 1692(a), (e); Lesher v. Law Offices of Mitchell N. Kay, PC, 650 F.3d 993, 996 (3d Cir. 2011), cert. denied, 132 S. Ct. 1143 (2012); Wilson, 225 F.3d at 484. Another important purpose of this legislation was to insure that those debt collectors who refrain from using such practices are not competitively disadvantaged. See, e.g., § 1692(e); Lesher, 650 F.3d at 996. As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes. See, e.g., Lesher, 650 F.3d at 997; Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006).

10

In <u>Graziano</u> and <u>Wilson v. Quadramed Corp.</u>, 225 F.3d 350 (3d Cir. 2000), we specifically considered whether or not debt collection correspondence violated § 1692g. Simply put, "statutory notice must not only explicate a debtor's rights; it must do so effectively." <u>Graziano</u>, 950 F.2d at 111. "In order to comply with the requirements of section 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter—the required notice must also be conveyed effectively to the debtor." <u>Wilson</u>, 225 F.3d at 354 (citing <u>Payco-General</u>, 225 F.3d at 484). The validation notice accordingly "must be in print sufficiently large to be read, and must be sufficiently prominent." <u>Graziano</u>, 990 F.2d at 111 (citing <u>Swanson v. Southern Oregon Credit Serv.</u>, 869 F.2d 1222, 1225 (9th Cir. 1988)). "More importantly for present purposes, the notice must not be overshadowed or contradicted by accompanying messages from the debt collector." <u>Id.</u> In other words, "a collection letter will not meet the requirements of the Act where the validation notice is printed on the back and the front of the letter does not contain any reference to the notice" or, more generally, where "the validation notice is overshadowed or contradicted by accompanying messages or notices from the debt collector." <u>Wilson</u>, 225 F.3d at 355 (citing <u>Graziano</u>, 950 F.2d at 111; <u>Payco-General</u>, 943 F.2d at 484).

Amended by Congress in 2006, § 1692g(b) now expressly provides that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and

address of the original creditor." We note that this amendment has generally been viewed as a codification of the "overshadowed or contradicted" rule or gloss previously adopted by the courts themselves. See, e.g., McMurray v. Procollect, Inc., 687 F.3d 665, 669 n. 2 (5th Cir. 2012); Zemeckis v. Global Credit & Collection Corp., 679 F.3d 632, 635 n.1 (7th Cir.), cert. denied, 133 S. Ct. 584 (2012); Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010).

We have turned to the well-established "least sophisticated debtor" standard in order to determine whether or not the required validation notice was "overshadowed or contradicted" by other messages or notices from the debt collector. See, e.g., Wilson, 225 F.3d at 354; Graziano, 950 F.2d at 111. "'The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law.'" Lesher, 650 F.3d at 997 (quoting Brown, 464 F.3d at 453) (alteration in original). "As the [Sixth Circuit] explained in [Smith v. Computer Credit, Inc., 167 F.3d 1052 (6th Cir. 1999)], the 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" Wilson, 225 F.3d at 354 (quoting Smith, 167 F.3d at 1054). In other words, "[t]his standard is less demanding than one that inquires whether a particular communication would mislead or deceive a reasonable debtor." Campuzano-Burgos v. Midland Mgmt., Inc., 550 F.3d 294, 298-99 (3d Cir. 2008) (citing Brown, 464 F.3d at 455). Nevertheless, "the standard does not go so far

12

as to provide solace to the willfully blind or non-observant." Id. at 299. The debtor is still held to a quotient of reasonableness, a basic level of understanding, and a willingness to read with care, and the debt collector accordingly cannot be held liable for bizarre or idiosyncratic interpretations. See, e.g., Wilson, 225 F.3d at 354-55. For example, even the "least sophisticated debtor" is expected to read any notice in its entirety. See, e.g., Lesher, 650 F.3d at 997.

As we pointed out in Wilson, the Second Circuit "ruled that a validation notice 'is overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights.'" Wilson, 225 F.3d at 354 (quoting Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996)). "The Court of Appeals for the Second Circuit elaborated that a collection letter 'is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" Id. (quoting Russell, 74 F.3d at 35).

As the District Court indicated, the Validation Notice on the reverse side of HRRG's Collection Letter—at least when viewed in isolation—satisfied this statutory scheme. "Further, the Collection Letter does not threaten or encourage Plaintiff to waive his statutory right to challenge the validity of the debt." Caprio, 2012 WL 847486, at *4. In fact, we considered such claims of improper threats or demands in Graziano as well as Wilson.

We specifically concluded in Graziano that "the juxtaposition of two inconsistent statements . . . rendered the

13

statutory notice invalid under section 1692g." Graziano, 950 F.2d at 111. The debt collector's notice "threatened legal action within ten days unless the debt was resolved in that time" and included, at the bottom of the page, "the phrase 'See reverse side for information regarding your legal rights!'" Id. at 109. The required validation notice then appeared on the reverse side of this document. Id. We held that there was "a reasonable probability that the least sophisticated debtor, faced with a demand for payment within ten days and a threat of immediate legal action if payment is not made in that time, would be induced to overlook his statutory right to dispute the debt within thirty days." Id. at 111 (citing Swanson, 869 F.2d at 1225-26). "A notice of rights, when presented in conjunction with such a contradictory demand, is not effectively communicated to the debtor." Id.

We then reached the opposite conclusion in Wilson, holding that "neither the form nor the substance of Quadramed's letter overshadowed or contradicted the validation notice." Wilson, 225 F.3d at 361. This debt collection letter stated that "'[o]ur client has placed your account with us for immediate collection'" and that "'[w]e shall afford you the opportunity to pay this bill immediately and avoid further action against you.'" Id. at 352. The next paragraph added that, "'[t]o insure immediate credit to your account, make your check or money order payable to ERI'" and directed the debtor to "'[b]e sure to include the top portion of this statement and place your account number on your remittance.'" Id. The required validation notice appeared in the letter's third and final paragraph. Id. While

14

recognizing that this letter presented "a close question," we ultimately were "not convinced that the language in the first two paragraphs overshadows or contradicts the validation notice such that the 'least sophisticated debtor' would be confused or mislead [sic] as to his rights to dispute or seek validation of the debt."  Id. at 353. We reached this conclusion based on our interpretation of both the "form" and the "substance" of the letter:

> First of all, upon review of the physical characteristics and form of the letter, we have concluded that the first two paragraphs of the letter do not overshadow the validation notice. The validation notice was presented in the same font, size and color type-face as the first two paragraphs of the letter. Moreover, the required notice was set forth on the front page of the letter immediately following the two paragraphs that Wilson contends overshadow and contradict the validation notice. Accordingly, Wilson's overshadowing claim must fail.
>
> Second, an actual or apparent contradiction between the first two paragraphs and the third one containing the validation notice does not exist here. Unlike the collection letter in Graziano, which demanded payment within ten days and threatened immediate legal action if payment was not made in that time, Quadramed's letter makes no such demand or threat. Instead, Wilson is presented with two

15

options:   (1) an opportunity to pay the debt immediately and avoid further action, or (2) notify Quadramed within thirty days after receiving the collection letter that he disputes the validity of the debt.  As written, the letter does not emphasize one option over the other, or suggest that Wilson forego the second option in favor of immediate payment.  Thus, we find the least sophisticated debtor would not be induced to overlook his statutory right to dispute the debt within thirty days.

Id. at 356 (footnote omitted).

Caprio's own case against HRRG rests on the "please call" language contained in the second paragraph of the body of the Collection Letter:  "If we can answer any questions, or if you feel you do not owe this amount, **please call** us toll free at **800-984-9115** or write us at the above address."  (JA Vol. II at 16.)  In contrast to the debtors in Graziano and Wilson, Caprio claims that HRRG's Collection Letter violated § 1692g because the least sophisticated debtor could reasonably believe that he could effectively dispute the validity of the debt by making a telephone call, even though such disputes must be made in writing in order to be effective in this Circuit.  The District Court, however, concluded that the "please call" language, when read in the context of the entire Collection Letter as a whole, would not confuse the "least sophisticated debtor."  According to the District Court, "[t]he Collection Letter clearly and accurately sets forth all of the required validation notice language, and the language on the

16

front does not overshadow or contradict that validation notice." Caprio, 2012 WL 847486, at *5.

Based on our own interpretation of the Collection Letter from the perspective of the applicable "least sophisticated debtor," we nevertheless determine that both the "substance" as well as the "form" of this Collection Letter overshadowed and contradicted the Validation Notice. See Wilson, 225 F.3d at 361.

We do acknowledge that this "please call" language could be read as nothing more than a mere invitation given other aspects of the Collection Letter. In fact, the District Court may be correct that "[a] more appropriate reading of the Collection Letter reveals that the language on the front of the letter reflects an invitation to communicate, and the validation notice on the back of the letter sets forth the Plaintiff's rights." Caprio, 2012 WL 847486, at *5. The short paragraph containing this "please call" language actually included the following instruction: "(NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.)" (JA Vol. II at 16.) Already "charged with reading the Collection Letter in its entirety," Caprio, 2012 WL 847486, at *5 (citing Campuzano-Burgos, 550 F.3d at 298), Caprio would then find the required Validation Notice on this "REVERSE SIDE." As the District Court also noted, the Collection Letter did not expressly state that a telephone call would be sufficient to dispute the debt.

However, it is not our responsibility to decide whether the debtor or the debt collector offers "a more appropriate

17

reading" of a debt collection letter. We instead must interpret the document from the perspective of "least sophisticated debtor." Designed to protect naïve and even gullible individuals, "the 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" Wilson, 225 F.3d at 354 (quoting Smith, 167 F.3d at 1054).

Pursuant to this standard, we begin with the "substance" of the Collection Letter sent out by HRRG. This document instructed Caprio to call or write "if you feel you do not owe this amount." (JA Vol. II at 16.) At the very least, the "least sophisticated debtor" could reasonably "feel" that he or she "do[es] not owe this amount" if he or she actually disputed the debt and its validity. If so, this "please call" language basically instructed such a debtor to call or write in order to dispute the debt itself. While he or she certainly could (and, in actuality, must) raise a debt dispute in writing, it is well established that a telephone call is not a legally effective alternative for disputing the debt. See Graziano, 950 F.2d at 112.

With respect to the "form" of HRRG's Collection Letter, we observe that even more attention was then drawn to this deficient alternative because both the words "please call" and the toll-free telephone number itself were printed in bold. This telephone number appeared again in the letterhead at the top of the Collection Letter in an even larger font. In contrast, no such bold print was used in either the phrase "write us at the above address" or in the Validation Notice. Likewise, HRRG's mailing address only appeared in the

18

letterhead, where it was actually printed in a smaller font than HRRG's toll-free telephone number. We also note that—unlike the "please call" language—the required Validation Notice was relegated to the back side of the Collection Letter. Especially given these circumstances, it appears more likely that the "least sophisticated debtor" would take the easier—but legally ineffective—alternative of making a toll-free telephone call to dispute the debt instead of going to the trouble of drafting and then mailing a written dispute.

We therefore conclude that the Collection Letter was deceptive because "'it can be reasonably read to have two or more different meanings, one of which is inaccurate,'" i.e., that Caprio could dispute the debt by making a telephone call. Wilson, 225 F.3d at 354 (quoting Russell, 74 F.3d at 35). In short, the Validation Notice was overshadowed and contradicted because the "least sophisticated debtor" would be "'uncertain as to her rights.'" Id. (quoting Russell, 74 F.3d at 35).

The District Court was also "persuaded by the holdings of other courts addressing similar issues." Caprio, 2012 WL 847486, at *4. However, it appears that HRRG's own Collection Letter "is distinguishable from the collection letters at issue in" this prior case law. See Wilson, 225 F.3d at 357.

For instance, the District Court and HRRG, like this Court in Wilson, id. at 359-60, have turned to a ruling by the Ninth Circuit. In Terran v. Kaplan, 109 F.3d 1428 (9th Cir. 1997), the debt collection letter stated in its second paragraph

19

that, "'[u]nless an immediate telephone call is made to J. SCOTT, a collection assistant of our office at (602) 258-8433, we may find it necessary to recommend to our client that they proceed with legal action,'" id. at 1434. Citing to Graziano and a number of other cases, the Ninth Circuit observed that "[e]very other circuit that has concluded that section 1692g was violated, in which the least sophisticated debtor standard is applied involved a written communication containing language regarding *payment* of the alleged debt that contradicted or overshadowed the validation notice." Id. at 1433 (footnote omitted) (citing United States v. Nat'l Fin. Servs, Inc., 98 F.3d 131, 139 (4th Cir. 1996); Russell, 74 F.3d at 34; Graziano, 950 F.2d at 111; Payco-General, 943 F.2d at 484). "In each of these cases, payment was demanded within a time period less than the statutory thirty days granted to dispute the debt *and* this demand was communicated in a format that emphasized the duty to make payment, and obscured the fact that the debtor had thirty days to dispute the debt." Id. (citing Nat'l Fin. Servs., 98 F.3d at 139; Russell, 74 F.3d at 32; Graziano, 950 F.2d at 109; Payco-General, 943 F.2d at 483); see also Wilson, 225 F.3d at 359-60 (summarizing Terran's account of prior case law). In any case, the Terran court ultimately determined that the challenged language "simply encourages the debtor to communicate with the debt collection agency" and "does not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt." Terran, 109 F.3d at 1434. In contrast, HRRG's Collection Letter did more than merely ask Caprio to call or write if "we can answer any questions." (JA Vol. II at 16.) It also asked him to "**please call** us toll free at **800-984-9115** or write us at

20

the above address" if "you feel you do not owe this amount." (Id.)  In addition, the text of the Terran letter was presented in the same ordinary font and without any particular emphasis (with the exception of the debtor's name and the name of the person to contact), and the required validation notice appeared on the front side of the document (in the third and final paragraph).[1]  Terran, 109 F.3d at 1434.

---

[1]  We further note that the Second Circuit specifically considered a claim that a letter violated § 1692g because it asked the debtor to telephone the debt collector even though a telephone call is not sufficient to preserve the debtor's rights under FDCPA.  The debt collection letter in Miller v. Wolpoff & Abrahamson, L.L.P., 321 F.3d 292 (2d Cir. 2003), stated, inter alia, that "'[a]fter you have read the important notice on the reverse side of this letter, if appropriate please call our office to resolve this matter,'" id. at 296.  In addition to including a validation notice on the reverse side of the document, "the front of the letter instructs the recipient that '[w]hen paying the balance in full or if you are unable to call our office, check one of the options below and return the bottom portion of this letter . . . .'"  Id. at 310 (alteration in original).  "While the options detailed on the bottom of the letter do not include requesting validation of the debt, the bottom of the letter states in large-print, capital letters, 'BEFORE RESPONDING TO THIS LETTER SEE REVERSE SIDE FOR IMPORTANT NOTICE.'"  Id.  The Second Circuit ultimately concluded that, "[w]ith these repeated instructions to review the validation notice on the back of the letter before responding to the letter, even the least sophisticated consumer would realize that it is

21

We add that the Fourth Circuit determined that a form letter, demanding, among other things, a telephone call, violated § 1692g and the "contradicted or overshadowed"

---

'appropriate' to contact W & A's office by phone only if the consumer did not wish to exercise his or her FDCPA rights as outlined on the reverse of the letter." Id. In other words:

> Where a validation notice plainly specifies that FDCPA contact must be in writing, and nothing on the front of the letter suggests in any way that an instruction to call was intended to override the requirements outlined in the validation notice, we do not believe that a reasonable consumer—having twice been instructed to review the validation notice *before* taking any further action—who wished to exercise his or her FDCPA validation rights could be misled into thinking that the clear obligation to request validation in writing was somehow modified by either the invitation to call if appropriate or the four options on the bottom of the letter.

Id.

In addition to lacking "repeated instructions" to read the reverse side of the document before taking any further action, HRRG's Collection Letter went beyond merely asking Caprio to "if appropriate please call our office to resolve this matter."

22

rule. In <u>Wilson</u>, we actually relied on <u>Miller v. Payco-General American Credits, Inc.</u>, 943 F.2d 482 (4th Cir. 1991), for certain principles governing the § 1692g inquiry and then distinguished this ruling based on a comparison between the respective debt collection documents. <u>Wilson</u>, 225 F.3d at 354-55, 357-58. The <u>Payco-General</u> form included the following statement in black boldface type: "'IF THERE IS A VALID REASON, PHONE US AT [telephone number] TODAY. IF NOT, PAY US-NOW.'" <u>Payco-General</u>, 943 F.2d at 483 (alteration in original). The Fourth Circuit ultimately agreed with the debtor that this form contradicted and overshadowed the required validation notice appearing on the reverse side of the document:

> The front of the Payco form demands "IMMEDIATE FULL PAYMENT" and commands the consumer to "PHONE US TODAY," emphasized by the word "NOW" emblazoned in white letters nearly two inches tall against a red background. The message conveyed by those statements on the face of the form flatly contradicts the information contained on the back.
>
> A consumer who wished to obtain validation of his debt could lose his rights under the statute if he followed the commands to telephone. Section 1692g guarantees that validation will be sent and collection activities will cease only when the consumer disputes the debt in writing. If a consumer attempted to

23

exercise his statutory rights by making the requested telephone call, Payco would be under no obligation to comply with section 1692g's directives to verify the debt and to cease collection efforts. The language on the front of the form emphatically instructs consumers to dispute their debt by telephone in opposition to the statutory requirements.

Id. at 484. The Fourth Circuit further noted that the emphasis placed on immediate action stood in contradiction with the thirty-day response period established by the FDCPA itself. Id. Finally, it observed that "[s]creaming headlines, bright colors and huge lettering" all pointed to a deliberate policy of evading the spirit of the FDCPA and misleading the debtor into disregarding the validation notice. Id.

The Fourth Circuit's opinion thereby provides some additional support for our conclusion that the Validation Notice was overshadowed and contradicted by the Collection Letter. We acknowledge the Fourth Circuit's decision involved more than just an instruction to make a telephone call and that it actually considered a debt collection letter filled with the kind of "threatening" language and formatting choices clearly condemned by the courts. See, e.g., Wilson, 225 F.3d at 358 ("The offending language in the Miller letter, as well as the format, could not be more different from the Quadramed letter."). However, just as Payco-General stated that, "'IF THERE IS A VALID REASON, PHONE US AT [telephone number] TODAY,'" Payco-General, 943 F.2d at 483 (alteration in original), HRRG instructed Caprio that, "if

24

you feel you do not owe this amount, **please call** us toll free at **800-984-9115** or write us at the above address" (JA Vol. II at 16). At the very least, HRRG's Collection Letter more closely resembled the debt collection letter at issue in <u>Payco-General</u> than the document considered in <u>Terran</u>. Accordingly, we likewise "hold that the collection agency did not effectively convey certain statutorily required information to the consumer."[2] <u>Payco-General</u>, 943 F.2d at 483.

---

[2] We also note that the United States District Court for the Northern District of Illinois addressed a debt collection letter nearly identical to the Collection Letter at issue in this case. In <u>Seplak v. IMBS, Inc.</u>, No. 98 C 5973, 1999 WL 104730 (N.D. Ill. Feb. 23, 1999), the first of two letters included the following language: "'If we can answer any questions, or if you feel you do not owe this amount, please call us toll free at 800-984-9115, or write us at the above address.'" <u>Id.</u> at *1 (citing 15 U.S.C. § 1692g(a)). In turn, "a notification to see the reverse side, which acknowledges the writing requirement to protect validation rights, appears in the same paragraph as the telephone request." <u>Id.</u> at *5. Denying IMBS's motion to dismiss, the <u>Seplak</u> court reasonably concluded that "a consumer could mistakenly allow thirty days to pass without producing the written notification necessary to obtain verification of the debt and the name and address of the original creditor." <u>Id.</u> (citation omitted). Specifically, the debt collector's correspondence made use of "'boldface' to emphasize the words 'please call' and the toll-free telephone number." <u>Id.</u> The initial debt collection letter, "by stating 'if you feel you do not owe this amount, please call,'" also suggested to the consumer that he or she "may use

**B.      The § 1692e(10) Claim**

Section 1693e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In turn, § 1692e(10) specifically prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." The District Court determined that HRRG was entitled to judgment on the pleadings because, "[w]hen allegations under 15 U.S.C. § 1692e(10) are based on the same language or theories as allegations under § 15 U.S.C. § 1692g, the analysis of the § 1692g claim is usually dispositive." Caprio, 2012 WL 847486, at * 5 (citing Ardino v. Lyons, Doughty & Veldhuis, P.C., No. 11-848, 2011 WL 6257170, at *11-*12 (D.N.J. Dec. 14, 2011); Vasquez v. Gertler & Gertler, Ltd., 987 F. Supp. 652, 659 (N.D. Ill. 1997)).

Because we have concluded that the District Court committed reversible error by granting judgment on the pleadings as to the § 1692g claim, we must reach the same conclusion with respect to the claim brought under § 1692e(10).

---

the telephone to dispute the validity of the debt, clearly contradicting the statute." Id. (citation omitted). Finally, both of IMBS's letters failed to explain how such a telephone call would fit within the scheme set forth in the validation notice. Id.

## IV.

For the foregoing reasons, we will vacate the District Court's order granting HRRG's motion for judgment on the pleadings and will remand for further proceedings consistent with our opinion.