NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3430
_____

NAVA LANIADO,

Appellant

v.

CERTIFIED CREDIT & COLLECTION BUREAU
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 3-14-cv-02798)
Honorable Peter G. Sheridan, District Judge

_____

Argued May 11, 2017

BEFORE:  AMBRO, RESTREPO, and COWEN, <u>Circuit</u> <u>Judges</u>

(Filed: August 29, 2017)

Ari H. Marcus
Yitzchak Zelman     [ARGUED]
Marcus & Zelman
1500 Allaire Avenue
Suite 101
Ocean, NJ 07712

    *Counsel for Appellant*

Peter Cipparulo, III  [ARGUED]
Suite K
349 Route 206
Hillsborough, NJ 08844

*Counsel for Appellee*

_____

OPINION*
_____

COWEN, <u>Circuit</u> <u>Judge</u>.

Nava Laniado appeals from the order of the United States District Court for the District of New Jersey granting the motion to dismiss filed by Certified Credit & Collection Bureau ("Certified Credit"). We will vacate and remand for further proceedings.

I.

Laniado filed this action against Certified Credit under the Fair Debt Collection Practices Act ("FDCPA"). Her allegations implicate two letters sent by Certified Credit: (1) a letter mailed to Laniado on or about February 13, 2014; and (2) a letter mailed to Laniado on or about March 5, 2014. It is undisputed that "[t]his initial demand letter contained the 30-day Validation Notice required by 15 USC § 1692g." (Appellant's Brief at 5.) According to Laniado, the second letter contained language that overshadowed and contradicted the "Validation Notice" in violation of 15 U.S.C. §§ 1692g and 1692e(10).

_____

*This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

Turning to the March 5, 2014 letter, we note that the letterhead listed (below the debt collector's name) Certified Credit's mailing address and a toll-free telephone number ("PO BOX 336 RARITAN, NJ 08869 TOLL FREE 888.750.9500"). (A53.) The letterhead also identified Certified Credit's website and fax number. The bottom part of the letter evidently consisted of a detachable slip (which Laniado was asked to enclose with her payment). The slip included Laniado's name and address as well as information about the client, account number, date, file number, and "BALANCE DUE" (i.e., "216.50"). (Id.) At the very bottom of the page, the document stated the following: "CALL OUR 24 HOUR AUTOMATED CUSTOMER SERVICE 800-354-4744 OR VISIT OUR WEBSITE: WWW.CERTIFIEDCCB.COM." (Id.) Where the return address would typically be located, Certified Credit's letter set forth another toll-free telephone number ("TOLL FREE 800-253-2920"), the date, a subject-matter line, the patient's name, the account number, and the date of service. (Id.) It also contained instructions (below the signature line and above the slip) to see the reverse side for important information, noted that Certified Credit accepted all major credit cards, and referred to Western Union and Quick Collect.

The body of the March 5, 2014 letter consisted of the following three paragraphs:

THE ABOVE ACCOUNT HAS BEEN PLACED WITH US FOR COLLECTION. SETTLEMENT IS EXPECTED TO BE MADE WITH THIS OFFICE. KINDLY REMIT PAYMENT IN FULL.

SHOULD THERE BE ANY DISCREPANY PLEASE CALL TOLL FREE 800-253-2920 OR FOR OUR 24 HOUR AUTOMATED CUSTOMER SERVICE CALL 800-354-4744.

3

THIS IS AN ATTEMPT TO COLLECT A DEBT BY A DEBT COLLECTOR AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

(A53.)

Certified Credit moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The District Court granted its motion, and Laniado appealed. We vacated the order and remanded for the District Court to consider Caprio v. Healthcare Revenue Recovery Group, LLC, 709 F.3d 142 (3d Cir. 2013). See Laniado v. Certified Credit & Collection Bureau, 636 F. App'x 90 (3d Cir. 2016).

Certified Credit filed another motion to dismiss. Addressing (and distinguishing) Caprio in its ruling from the bench, the District Court granted the motion.

II.

The outcome of this appeal ultimately depends on our reading of Caprio.[1] Certified Credit and the District Court have indicated that Caprio and the debt collection letter at issue in that case are distinguishable, while Laniado characterizes the March 5, 2014 letter as "*Caprio* 2.0" (Appellant's Brief at 15). We conclude that Certified Credit's second letter to Laniado—like the letter the debt collector sent in Caprio—overshadowed and contradicted the Validation Notice.

---

[1] The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and we have appellate jurisdiction under 28 U.S.C. § 1291. We exercise de novo review with respect to a district court's dismissal for failure to state a claim pursuant to Rule 12(b)(6). See, e.g., Wilson v. Quadramed Corp., 225 F.3d 350, 353 (3d Cir. 2000). Whether language in a collection letter contradicts or overshadows the validation notice presents a question of law. See, e.g., Caprio, 709 F.3d at 147.

4

15 U.S.C. § 1692g(a) requires the debt collector to provide the following information to the debtor:

> **(1)** the amount of the debt;

> **(2)** the name of the creditor to whom the debt is owed;

> **(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

> **(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

> **(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

"Paragraphs 3 through 5 of section 1692g(a) contain the validation notice—the statements that inform the consumer how to obtain verification of the debt and that he has thirty days in which to do so." Caprio, 709 F.3d at 147 (quoting Wilson, 225 F.3d 350, 353-54 (3d Cir. 2000)). Under 28 U.S.C. § 1692g(b), a debt collector must "cease all collection efforts if the consumer provides written notice that he or she disputes the debt or requests the name of the original creditor until the debt collector mails either the debt verification or creditor's name to the consumer." Wilson, 225 F.3d at 354. However, in order to be effective, the dispute must be in writing. Caprio, 225 F.3d at 148 (quoting Graziano v. Harrison, 950 F.2d 107, 112 (3d Cir. 1991)).

The validation notice must "be conveyed effectively to the debtor." Wilson, 225 F.3d at 354 (citing Miller v. Payco-General Am. Credits, Inc., 943 F.2d 482, 484 (4th Cir.

5

1991)).  In short, this means that the notice must not be overshadowed or contradicted by other messages or notices from the debt collector.  See, e.g., 15 U.S.C. § 1692g(b); Caprio, 709 F.3d at 148-49.  We apply the "least sophisticated debtor" standard in order to ascertain whether the debt collector has overshadowed or contradicted the validation notice.  See, e.g., Caprio, 709 F.3d at 149.  While even the least sophisticated debtor is held to a basic quotient of reasonableness and understanding (i.e., he or she is expected to read any notice in its entirety with some care, and the debt collector cannot be held liable for bizarre or idiosyncratic interpretations), this standard is intended to protect all consumers—the gullible as well as the shrewd.  See, e.g., id.  Accordingly, the standard is less demanding than one that simply considers whether the language would mislead or deceive a reasonable debtor.  See, e.g., id.  "The Court of Appeals for the Second Circuit elaborated that a collection letter 'is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate.'"  Wilson, 225 F.3d at 354 (quoting Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996)).

In Caprio, we explained that "[t]he Validation Notice on the reverse side of [the debt collector's] Collection Letter—at least when viewed in isolation—satisfied this statutory scheme."  Caprio, 709 F.3d at 149.  In addition, the letter did not threaten or encourage Caprio to waive his statutory right to challenge the debt's validity.  Id.; see also id. at 149-50 (addressing Graziano v. Harrison, 950 F.2d 107, 112 (3d Cir. 1991), and Wilson, which did consider claims of improper threats or demands).  Instead, Caprio's case against the debt collector "rests on the 'please call' language contained in the second paragraph of the body of the Collection Letter:  'If we can answer any

6

questions, or if you feel you do not owe this amount, **please call** us toll free at **800-984-9115** or write us at the above address.'" Id. at 150 (citation omitted).

We determined that, pursuant to the "least sophisticated debtor" standard, "both the 'substance' as well as the 'form' of this Collection Letter overshadowed and contradicted the Validation Notice." Id. at 151 (quoting Wilson, 225 F.3d at 361). "[T]he Collection Letter was deceptive because 'it can be reasonably read to have two or more different meanings, one of which is inaccurate,' i.e., that Caprio could dispute the debt by making a telephone call." Id. at 152 (quoting Wilson, 225 F.3d at 354). We reach the same conclusion here.

Considering the substance of the March 5, 2014 letter that Certified Credit sent to Laniado, we find that it is materially indistinguishable from the letter at issue in Caprio. The debt collector's letter in Caprio instructed "to call or write 'if you feel you do not owe this amount.'" Id. at 151 (citation omitted). "At the very least, the 'least sophisticated debtor' could reasonably "feel" that he or she "do[es] not owe this amount" if he or she actually disputed the debt and its validity. If so, this "please call" language basically instructed such a debtor to call or write in order to dispute the debt itself." Id. at 151. Likewise, the letter currently before us instructed Laniado to call either a toll-free telephone number or a 24-hour automated customer service number should there be any discrepancy. The least sophisticated debtor could reasonably believe there was a discrepancy if he or she "actually disputed the debt and its validity." "If so, this 'please call' language basically instructed such a debtor to call . . . to dispute the debt itself. While he or she certainly could (and, in actuality, must) raise a debt dispute in writing, it

7

is well established that a telephone call is not a legally effective alternative for disputing the debt."  Id. (citing Graziano, 950 F.2d at 112).

According to Certified Credit (and the District Court), the March 5, 2014 letter "'is a simple attempt to collect a debt'" (Appellee's Brief at 13 (quoting A13-A14)), "invites the receiver to discuss the account and settlement" (id. at 15), and "is merely continued collection activity and encourages settlement" (id.).  Certified Credit argues that the language at issue here must be understood as a continuation of its statements in the preceding paragraph reminding Laniado of the placement of the account for collection, indicating that settlement is expected with Certified Credit, and requesting payment in full.  The letter could perhaps be read as nothing more than an invitation to communicate, pay, or reach some sort of compromise.  "However, it is not our responsibility to decide whether the debtor or the debt collector offers 'a more appropriate reading' of a debt collection letter."  Id.  In fact, we ruled in Caprio's favor even though we acknowledged that "this 'please call' language could be read as nothing more than a mere invitation given other aspects of the Collection Letter."  Id.  We did so because the document must be understood from the perspective of the least sophisticated debtor—a standard that protects even the gullible. Id. at 249, 251.  In turn, the March 5, 2014 letter "did more than merely ask [Laniado] to call . . . if 'we can answer questions.'" Id. at 152 (distinguishing Terran v. Kaplan, 109 F.3d 1428 (9th Cir. 1997)); see also, e.g., id. at 153 n.1 ("In addition to lacking 'repeated instructions' to read the reverse side of the document before taking any further action, [the debt collector's] Collection Letter went beyond merely asking Caprio to 'if appropriate please call our office to resolve this

8

matter.'" (distinguishing <u>Miller v. Wolpoff & Abramson, L.L.P.</u>, 321 F.3d 292 (2d Cir. 2003))).  Unlike the <u>Caprio</u> letter, this letter did not even offer a choice between making a telephone call or writing a letter.  At the very least, the least sophisticated debtor could read the second paragraph—with its express language instructing the debtor to "PLEASE CALL" should there be "ANY DISCREPANCY"—as more than a mere continuation of the debt collector's request for payment or for settlement discussions.

The form of the correspondence also weighs in favor of Laniado.  Initially, the <u>Caprio</u> Court still ruled against the debt collector even though its letter, like the correspondence at issue here, was not "filled with the kind of 'threatening' language and formatting choices clearly condemned by the courts" (in cases like <u>Payco-General</u>).  <u>Id.</u> at 154 (citing <u>Wilson</u>, 225 F.3d at 358).  Unlike the <u>Caprio</u> letter (which used bold text to highlight the words "please call" and the toll-free telephone number and used a smaller font for the mailing address than the telephone number in the letterhead), <u>id.</u> at 151-52, the body of the March 5, 2014 letter used the same font, and Certified Credit's mailing address was listed in the letterhead in the same sized font as one of its toll-free telephone numbers.  The mailing address nevertheless still only appeared in the letterhead, while the document included a total of five references to three different toll-free telephone numbers.  In addition, we reiterate that Certified Credit did not even give the least sophisticated debtor the choice "to write us at the above address."

Finally, we, like the District Court, acknowledge that this case implicates "two separate letters" and that "plaintiff does not dispute the February validation letter, which indicated that she must dispute the debt in writing, complied with the FDCPA."  (A16.)

9

According to the Seventh Circuit, "not every follow-up letter sent during the validation period must automatically reiterate the safe harbor validation notice, refer back to that notice, or remind debtors about the validation period and the time remaining in that period." Durkin v. Equifax Check Servs., 406 F.3d 410, 417 (7th Cir. 2005). However, the question before us is not whether a subsequent letter sent during the 30-day validation period must always reiterate the validation notice. Instead, we must determine whether the March 5, 2014 letter overshadowed or contradicted the otherwise appropriate Validation Notice set forth in the initial letter mailed on or about February 13, 2014. See, e.g., id. ("Rather, the matter turns on whether the specific text contains any impermissible overshadowing or contradiction with respect to the validation notice." (citing Chauncey v. JDR Recovery, Inc., 118 F.3d 516, 518-19 (7th Cir. 1997))). Given the substance and form of the second letter, we conclude that it did overshadow and contradict the notice. In fact, the first letter appears to represent the functional equivalent of a validation notice set forth on the reverse side of a single letter. Just as the debt collector in Caprio set forth the "please call" language on the front of the letter and "relegated" the "required Validation Notice" to "the back side of the Collection Letter," Caprio, 709 F.3d at 152, Certified Credit included its "PLEASE CALL" language in a letter mailed ten days before the expiration of the validation period—while "relegating" the legally mandated validation notice to a letter it had sent to Laniado more than three weeks earlier. Unlike its counterpart in Caprio (which included an instruction in all capital letters directing Caprio to see the reverse side for important information, id. at 151), the March 5, 2014 letter did not even mention or otherwise refer to the February 13, 2014 letter. Given the

circumstances, it is certainly conceivable that the least sophisticated debtor wishing to dispute the debt could follow the apparent instruction set forth in a mailing received shortly before the deadline and make an ineffective toll-free phone call to do so.

We accordingly conclude that the District Court committed reversible error by dismissing Laniado's § 1692g claim. Having done so, "we must reach the same conclusion with respect to the claim brought under § 1692e(10)." Id. at 155.

### III.

For the foregoing reasons, we will vacate the District Court's order granting Certified Credit's motion to dismiss and will remand for further proceedings consistent with this opinion.